IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 08–cv–00605–EWN–MJW


MICHAEL R. EVERHART, and
KARMELLA FRANIC EVERHART, Individually and as Next
Friends and Natural Parents of
CHARLES MICHAEL EVERHART, a Minor,

      Plaintiff,

v.

THE CHILDREN'S HOSPITAL,
CENTURA HEALTH d/b/a ST. ANTHONY HOSPITAL, and
FLIGHT FOR LIFE,
ELIZABETH H. THILO, M.D.,
PATTI J. THUREEN, M.D.,
JOHN DOE, M.D.,
MARY ROE, M.D.,
JANE DOE, R.N., and
JANE DOE, R.N.,

      Defendants.

---

## ORDER AND MEMORANDUM OF DECISION

---

    This is a medical tort case.  Plaintiffs Michael R. Everhart and Karmella Franic Everhart

allege that Defendants The Children's Hospital ("TCH"), and the entity owning or managing

Flight for Life ("FFL"),[1] negligently intubated their infant son, Charles Michael Everhart, prior

---

[1] Plaintiffs' outstanding motion to amend their complaint seeks to clarify who this party
is.  (*See* Am. Mot. for Leave to File a First Am. Compl. [filed June 13, 2008].)

to an emergency medical flight from Albuquerque, New Mexico, to Denver, Colorado.  Plaintiffs

additionally allege TCH is liable for any subsequent injuries caused to their son at the hospital.

This matter comes before the court on Plaintiffs' "Motion to Re-Transfer Case to the Federal

District Court in New Mexico, or in the Alternative, to Certify the Legal Question Presented to

the New Mexico Supreme Court for Final Resolution," filed May 23, 2008.  Jurisdiction is

proper pursuant to 28 U.S.C. § 1332.

## FACTUAL AND PROCEDURAL BACKGROUND

This case was originally filed in New Mexico state court on July 7, 2006.  (*See* Mem. Op.

and Order [hereinafter "3/21/08 Order"], Ex. 1 at 1 [Notice of Removal] [filed Mar. 24, 2008].)

On July 21, 2006, the case was removed to the United States District Court for the District of

New Mexico.  (*Id.*, Ex. 1 at 6 [Notice of Removal].)  On July 9, 2007, TCH and FFL moved to

dismiss for lack of personal jurisdiction, or, in the alternative, to transfer venue.  (*Id.* at 1.)  On

March 21, 2008, the federal district court in New Mexico denied Defendants' motion to dismiss,

but granted their alternative motion to transfer venue after finding jurisdiction wanting.  (*Id.* at

31.)  On March 24, 2008, this case was transferred to, and docketed in, this court.  (*See id.*)

On May 23, 2008, Plaintiffs moved to re-transfer this case back to the federal district

court in New Mexico on the grounds that: (1) the efficiency rationale on which the transferor

court allegedly based its transfer order was illusory; and (2) the transferor court erred in holding

it lacked personal jurisdiction over TCH.  (Mot. to Re-Transfer Case to the Fed. District Court in

New Mexico, or in the Alternative, to Certify the Legal Question Presented to the New Mexico

Supreme Court for Final Resolution at 5–11 [filed May 23, 2008] [hereinafter "Pls.' Br."].)

Plaintiffs alternatively requested that I certify the question of whether the federal district court in New Mexico had jurisdiction over Defendants under New Mexico's long-arm statute to the New Mexico Supreme Court. (*Id*. at 11–12.) On June 16, 2008, TCH responded to this motion. (Def. the Children's Hospital's Resp. to Pls.' Mot. to Retransfer Case to the Fed. District Court in New Mexico, or in the Alternative, to Certify the Legal Question Presented to the New Mexico Supreme Court for Final Resolution [filed June 16, 2008] [hereinafter "TCH's Resp."].) On June 18, 2008, FFL separately responded. (Flight for Life's Resp. to Mot. to Re-Transfer Case to the Fed. District Court in New Mexico, or in the Alternative, to Certify the Legal Question Presented to the New Mexico Supreme Court for Final Resolution [filed June 18, 2008] [hereinafter "FFL's Resp."].) On July 11, 2008, Plaintiffs replied. (Pls.' Reply to Defs.' Resp. to Mot. to Retransfer Case to the Fed. District Court in New Mexico, or in the Alternative, the [sic] Certify the Legal Question Presented to the New Mexico Supreme Court for Final Resolution [filed July 11, 2008] [hereinafter "Pls.' Reply"].)

The essential facts pertaining to Defendants' motion to dismiss — which Plaintiffs explicitly incorporate into their instant motion — were outlined by the transferor court in its order to transfer:

> Plaintiffs Michael R. Everhart and Karmella Franic Everhart are the parents of Charles Michael Everhart ("Charles"), a minor. The Everhart family currently resides in Ohio. However, at the time of Charles's birth (and when they brought this action), Michael and Karmella Everhart were citizens of New Mexico.
> Charles was born August 20, 2004 at the University of New Mexico Health Sciences Center ("UNMHSC") in Albuquerque. Charles was born prematurely, at just over 33 weeks, and X-rays taken shortly after his birth revealed that he might be suffering from hyaline membrane disease, a possibly

fatal respiratory disease. Because there was no bed available for Charles in the neonatal intensive care unit of the UNMHSC, arrangements were made to transport him by air ambulance to The Children's Hospital in Denver. Indeed Michael Everhart testified through his deposition that, having been given the choice of Phoenix or Denver, the Everharts "picked Denver based on distance." Accordingly, arrangements were made for the air ambulance company known as Flight for Life to transport Charles from Albuquerque to Denver, where he was to be admitted to The Children's Hosptial.

Before the air ambulance left Albuquerque, Flight for Life employee and registered nurse Karen Steur made two unsuccessful attempts to intubate Charles with a size 3.5 endotracheal tube. Charles was successfully intubated on the third try by Tiffany Garcia, an employee of The Children's Hospital. The intubation (and the Everhart parents' observation of it) is the primary allegedly tortious act giving rise to the Complaint for Medical Negligence. Indeed, according to the Everharts,

> Charles weighed 1,798 grams when he was intubated. An infant weighing under 2,000 grams should not be intubated with anything larger than a 2.5 to a 3.0 endotracheal tube. Flight for Life's own protocol called for an endotracheal tube of 3.0 or smaller. Other tubes ranging in size from 2.5 to 4.0 were available on the flight but were not used. The use of the improperly sized endotracheal tube is the primary allegation of negligence in this case. It also is undisputed that this act took place within the state of New Mexico.

> The Everharts contend that once Charles was intubated, neither Nurse Steur nor Ms.Garcia checked for air leaks from the tube, which would have established whether it was too tight. As a result of the use of the too-large endotracheal tube, allege the Everharts, Charles developed a condition known as subglottic stenosis, which has required multiple surgeries and hospitalizations and also has permanently injured and debilitated him. They further contend that this alleged medical negligence continued after Charles was admitted to The Children's Hospital, where nurses and physicians failed to remove the tube in a timely manner.

(3/21/08 Order at 2–4 [internal citations omitted]; *see also* Pls.' Br. at 2–3 [quoting portions of

the same].)

In assessing whether it had personal jurisdiction over Defendants, the transferor court first outlined the law pertaining to personal jurisdiction, noting that Plaintiff bore the burden of proving: (1) Defendants committed at least one of the enumerated acts in New Mexico's long-arm statute; (2) the cause of action arose from such an act or acts; and (3) Defendants had minimum contacts with New Mexico sufficient to satisfy constitutional due process. (3/21/08 Order at 4–5.) The court noted that Defendants had conceded the first two requirements for personal jurisdiction because they admitted Plaintiffs' claims arose from their allegedly tortious acts in New Mexico. (*Id.* at 6.) As for constitutional due process, the transferor court noted its obligation to determine: (1) whether Defendants had "minimum contacts" with New Mexico such that they would reasonably anticipate being haled into court there; and (2) whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice. (*Id.* at 7.) With respect to the first inquiry, the court observed that the "minimum contacts" test in the context of alleged tortious acts focuses upon whether nonresidents "purposefully directed" their activities at the forum state. (*Id.* at 7–8.) With respect to the second inquiry, the court observed that the analysis of traditional notions of fair play and substantial justice essentially reduced to an inquiry into the reasonableness of exercising jurisdiction in light of such factors as: (1) the burden on the defendant; (2) the forum state's interest in the litigation; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in obtaining efficient resolution of controversies; and (5) the shared interest of the several states in furthering certain social policies. (*Id.* at 8–9.)

Applying this law to the facts, the court analyzed separately whether it had jurisdiction over FFL or THC. (*Id.* at 10–30.) With respect to FFL, the court found FFL had minimum contacts with New Mexico by virtue of its physical presence in the state whilst providing care to Charles Everhart and its primary function as an air ambulance company flying to states such as New Mexico to provide such care and transport. (*Id.* at 10–19.) In reaching this decision, the court distinguished Plaintiffs' case from other cases in which: (1) patients traveled to other states to receive care and suffered complications later; and (2) defendants committed tortious acts such as fraud, deceit, and misrepresentation against plaintiffs in a forum state by sending offending communications to such plaintiffs, but ancillary to some other primary purpose behind these communications, such as providing legal services in the defendants' home states. (*Id.*) The court next analyzed the reasonableness of exercising jurisdiction over FFL, addressing each of the five above-enumerated factors. (*Id.* at 19–25.) First, the court found FFL would not be substantially burdened by litigating in New Mexico, in part because it could have foreseen the possibility of having to defend an action in that state by virtue of its business, and because "the essence of [its] business is mobility." (*Id.* at 20.) Second, the court found Colorado and New Mexico had equally substantial interests in the litigation by virtue of their respective interests in: (1) overseeing suits against their licensed health care providers; and (2) ensuring out-of-state entities which make themselves available to render medical care within the forum state be held accountable for allegedly tortious acts. (*Id.* at 21–22.) Third, the court found neither Plaintiffs' interest in convenient and effective relief, nor the shared interest of the several states in furthering certain social policies, cut either for or against finding jurisdiction over FFL

reasonable.  (*Id.* at 22–23.)  Finally, the court found the interstate judicial system's interest in obtaining efficient resolution of controversies dispositive of the jurisdictional question because, for reasons discussed next, the court lacked jurisdiction over TCH, and "the most efficient resolution [would] likely obtain if [Plaintiffs] [were] able to proceed against both Defendants together in a single forum."  (*Id.* at 24.)

With respect to TCH, the court found it lacked minimum contacts with New Mexico because, unlike FFL, its primary function did not involve providing care in or transportation from states such as New Mexico.  (*Id.* at 25–28.)  As the court explained:

> Unlike [FFL], the essence of the work of [TCH] is not transportation.  Rather, [THC] exists to provide medical care to children in Denver.  As pertains to [THC], the transportation of Charles Everhart was merely incidental to that defendant's primary service to him, which was his admission to and treatment at its facility in Denver.  Thus, in contrast to [FFL's] presence in New Mexico, [TCH's] presence in New Mexico has not been shown to have been more than an isolated event, and ancillary to the primary role [TCH] was to play.

(*Id.* at 25–26 [citations omitted].)  The court acknowledged a TCH employee had committed one of the allegedly tortious acts in New Mexico by intubating Charles Everhart, but stated:

> However, the commission of a tortious act, without more, is not enough to support the exercise of personal jurisdiction if it is not shown that a defendant "purposefully initiate[d] activities in this State.  This is true even though technically [the defendant] may have committed a tortious act in New Mexico."

(*Id.* at 26–27 [quoting *Cronin v. Sierra Med. Ctr.*, 10 P.3d 845, 851 (N.M. Ct. App. 2000) (further citation omitted)].)  Because the court found the minimum contacts test unsatisfied with respect to THC, it declined to consider the reasonableness of asserting personal jurisdiction over this defendant.  (*Id.* at 28.)  Finally, the court determined the interests of justice supported

transferring this case pursuant to 28 U.S.C. § 1631, and ordered the case transferred to this court. (*Id.* at 28–30.)

## ANALYSIS

### 1.     *Legal Standard*

Title 28, section 1631 of the United States Code provides in relevant part:

> Whenever a civil action is filed in a [United States District Court] . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed . . ., and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . for the court from which it is transferred.

28 U.S.C. § 1631 (2006).  The Tenth Circuit has interpreted this provision as permitting the transfer of cases for want of personal jurisdiction.  *See, e.g.*, *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 793 (10th Cir. 1998).

When a case is transferred from one court to another, "'it remains what it was; all further proceedings in it are merely referred to another tribunal, leaving untouched whatever has been already done.'"  *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991) (citation omitted).  As a result, "traditional principles of law of the case counsel against the transferee court reevaluating the rulings of the transferor court, including its transfer order." *Id.* (citations omitted).  Explaining the importance of the law of the case doctrine in the context of transfer orders, the Supreme Court has noted "a perpetual game of jurisdictional ping-pong . . . would undermine public confidence in our judiciary [and] squander private and public

resources." *Christianson v. Colt. Indus. Operating Corp.*, 486 U.S. 800, 818–19 (1988).

Accordingly, the Court has noted:

> As [t]he doctrine of the law of the case is a heavy deterrent to vacillation on
> arguable issues, such reversals should necessarily be exceptional; courts will
> rarely transfer cases over which they have clear jurisdiction, and close questions,
> by definition, never have clearly correct answers. Under law-of-the-case
> principles, if the transferee court can find the transfer decision plausible, its
> jurisdictional inquiry is at an end.

*Id.* at 819 (citations and internal quotation marks omitted). Under both Supreme Court and

Tenth Circuit jurisprudence, transfers should only be reversed if they are "clearly erroneous" or

would work "a manifest injustice." *Id.*; *Chrysler Credit Corp.*, 928 F.2d at 1518.

## 2. *Evaluation*

Plaintiffs argue this case should be re-transferred to the federal district court in New

Mexico because: (1) different choice-of-law systems must apply to the case as transferred to this

court, thus rendering illusory the efficiency rationale allegedly motivating the transferor court's

order; and (2) the transferor court erred in determining it lacked personal jurisdiction over TCH.

(Pls.' Br. at 5–11.) Plaintiffs alternatively request that I certify the question of whether the

federal district court in New Mexico had jurisdiction over Defendants to the New Mexico

Supreme Court. (*Id.* at 11–12.) I address each issue in turn.

### a. *Efficiency Rationale Allegedly Motivating the Transferor Court's Order*

Plaintiffs first argue the efficiency rationale allegedly motivating the transferor court's

order was illusory because different state law will apply to their different claims against FFL and

TCH when this case goes to trial. (Pls.' Br. at 5–6.) As Plaintiffs argue, the transferor court

actually found it had personal jurisdiction over FFL, but not over TCH, and thus could not have

transferred the case with respect to FFL under 28 U.S.C. § 1631 as it represented, but only under

28 U.S.C. § 1404(a), because transfer under the former statute is only permitted when "there is a

want of jurisdiction."  (*Id.* at 6); 28 U.S.C. § 1631 (2006); *see also* 28 U.S.C. § 1404(a) (2006)

(permitting district courts to order change of venue in the interest of justice).  By contrast,

Plaintiffs argue the transferor court did properly transfer this case with respect to TCH under 28

U.S.C. § 1631 after finding jurisdiction over TCH wanting.  (Pls.' Br. at 5.)  Accordingly,

Plaintiffs argue, this court must apply Colorado choice-of-law rules to TCH, but New Mexico

choice-of-law rules to FFL, because different policy rationales inform different choice-of-law

determinations under the two transfer statutes depending upon whether personal jurisdiction was

originally satisfied or wanting.  (*Id.* at 5–6; *see also* Pls.' Reply at 9–10.)  Moreover, because

Colorado follows the Second Restatement of Conflict of Laws, and New Mexico follows the

First Restatement of Conflict of Laws, different bodies of law could control Plaintiffs' respective

claims against FFL and TCH, thus rendering illusory any alleged efficiency the transferor court

sought to promote by transferring the entire case to this court.  (*Id.*)

        While Plaintiffs' argument is creative, I find it is premised upon a false assumption.

Despite Plaintiffs' claim that the transferor court actually found it had personal jurisdiction over

FFL, a cursory reading of its order demonstrates otherwise, and Plaintiffs' only apparent basis

for so contending is the court's single sentence, taken out of context, that "[FFL's] *contacts* with

New Mexico are sufficient to allow the assertion of specific jurisdiction over it."  (3/21/08 Order

at 19 [emphasis added]; Pls.' Reply at 9.)  While the transferor court did so find, it additionally

-10-

found the exercise of jurisdiction over FFL would be unreasonable, and thus offend traditional notions of fair play and substantial justice.  (3/22/Order at 19–24.)  Because it is well-established that personal jurisdiction requires both minimum contacts and a determination that the exercise of jurisdiction be reasonable, I find Plaintiffs' erroneously premised argument to be without merit, and decline to consider whether the conclusions Plaintiffs claim flow from their false premise are true.  *See, e.g.*, *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007) (noting that evaluation of personal jurisdiction under the due process clause requires "a two-step analysis" consisting of the minimum contacts test, and an assessment of the reasonableness of exercising jurisdiction).  Accordingly, I reject Plaintiffs' first argument for re-transfer.

### b.    *The Transferor Court's Alleged Error in Determining It Lacked Jurisdiction over TCH*

Plaintiffs next argue the transferor court clearly erred in determining it lacked jurisdiction over TCH.  (Pls.' Br. at 6–11; Pls.' Reply at 4–9.)  Plaintiffs contend the transferor court's jurisdictional determination with respect to TCH was the *sine qua non* of its jurisdictional determination with respect to FFL, and that reversal of the former determination would mandate reversal of the latter.  (*Id.*)  While this is a much closer question, I find for the following reasons that the transferor court did not clearly err in determining it lacked jurisdiction over TCH.

The transferor court found it lacked personal jurisdiction over TCH because this defendant did not have sufficient minimum contacts with New Mexico to satisfy due process.  (3/21/08 Order at 25–28.)  In reaching this determination, the court analogized to two cases.  (*Id.* at 26.)  *In DeVenzeio v. Rucker, Clarkson & McCashin*, 918 P.2d 723 (N.M. Ct. App. 1996), the

New Mexico Court of Appeals held a defendant attorney did not have minimum contacts with New Mexico when his allegedly tortious acts of sending fraudulent, deceitful, and misrepresenting communications to New Mexico residents were "ancillary to [his] primary function" of "provid[ing] legal services in California on their behalf." *Id.* at 726. By contrast, in *Russey v. Rankin*, 837 F. Supp. 1103 (D.N.M. 1993), the federal district court in New Mexico found a California debt collector had minimum contacts with New Mexico when it allegedly violated the Fair Debt Collection Practices Act, and thus arguably committed a tort, by sending offending letters to the New Mexico plaintiff, because the defendant's "written correspondence [was] the nucleus of the alleged wrongful conduct rather than just an ancillary contact with the forum." *Id.* at 1105. The transferor court found the instant case closer to *DeVenzeio* than to *Russey*, noting that, unlike FFL, TCH's primary function did not involve providing care in or transportation from states such as New Mexico, but rather involved providing care to children in facilities in Denver. (3/21/08 Order at 25–28.) The court stated that "the transportation of Charles Everhart was merely incidental to [TCH's] primary service to him" and found TCH's "presence in New Mexico has not been shown to have been more than an isolated event, and ancillary to the primary role [it] was to play." (*Id.* at 25–26.) Accordingly, the court found TCH lacked minimum contacts with New Mexico. (*Id.* at 25–28.)

In passing, the court also considered whether TCH's alleged commission of a tort in New Mexico by negligently intubating Charles Everhart prior to the air ambulance's departure was *ipso facto* sufficient to establish TCH's minimum contacts with that state, but found it was not, stating: "[T]he commission of a tortious act, without more, is not enough to support the exercise

-12-

of personal jurisdiction if it is not shown that a defendant 'purposefully initiated activities in this state. This is true even though, technically [the defendant] may have committed a tortious act in New Mexico.'" (*Id.* at 26–27 [quoting *Cronin*, 10 P.3d at 851 (further citation omitted)].) The transferor court, in turn, cited *Cronin v. Sierra Medical Center* for this proposition, which had addressed whether physician-defendants from Texas had sufficient minimum contacts with New Mexico to justify personal jurisdiction over them in New Mexico where the plaintiff-patient alleged he developed complications from his heart surgery and follow-up treatment in Texas only after returning home to New Mexico, and claimed defendants' torts were committed in New Mexico because they were not completed until he suffered his injuries. 10 P.3d 845. The *Cronin* court assumed without deciding that the defendant-physicians had committed torts in New Mexico, but nonetheless found minimum contacts with the state wanting because the defendants had not purposefully initiated activities in that state, even if they had technically committed torts there. *Id.* at 850–53. The transferor court additionally cited *Gelineau v. New York University Hospital* for this same general proposition, which had found jurisdiction wanting over a defendant New York hospital that had allegedly provided a hepatitis-tainted blood transfusion to a New Jersey plaintiff who subsequently returned home and developed hepatitis. (*See* 3/21/08 Order at 28 [citing *Gelineau v. New York Univ. Hosp.*, 375 F. Supp. 661 [D.N.J. 1974].) With respect to *Gelineau*, the transferor court invoked a page of that court's decision reciting, "[w]hen one seeks out services which are personal in nature, such as those rendered by . . . physicians . . . and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but

are directed to the needy person himself," and observed, "it has not been shown that [THC's] services were directed to impact upon the State of New Mexico as opposed to having been directed to Charles [Everhart] himself." (*Id.* [citing *Gelineau*, 375 F. Supp. at 667].)

Plaintiffs instantly argue that the transferor court clearly erred in determining it lacked personal jurisdiction over TCH by analogizing to cases in which the defendants never entered the forum states. (Pls.' Br. at 6–11; Pls.' Reply at 4–9.) Plaintiffs emphasize that the alleged negligent intubation of Charles Everhart by a TCH employee occurred in New Mexico, and implicitly argue that the commission of a tort within a forum state always *ipso facto* establishes minimum contacts with that state. (*Id.*) Plaintiffs moreover claim any contrary ruling would yield absurd results because, for example, "a person from out of state who, while briefly passing through a corner of New Mexico for the first time, causes a horrific accident while here, resulting in serious personal injury or death, could not be held to answer in the courts of New Mexico under [that state's long-arm statute]." (Pls.' Reply at 8.) While I find Plaintiffs' argument compelling, I decline to hold for the following reasons that the transferor court clearly erred in determining it lacked personal jurisdiction over TCH.

With respect to personal jurisdiction over nonresident defendants, "the constitutional touchstone [is] whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (citation omitted). Due process requires "'that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there.'" *Id.* (citation omitted). The application of the minimum contacts test "'will vary with the quality and nature of the

defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Id.* at 474–75 (citation omitted). The "'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated,' contacts." *Id.* at 475 (citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." *Id.* (citations omitted). Finally, "[s]o long as it creates a 'substantial connection' with the forum, even a single act can support jurisdiction," but such single or occasional acts "may not be sufficient to establish jurisdiction if 'their nature and quality and the circumstances of their commission' create only an 'attenuated' affiliation with the forum." *Id.* n.18 (citations omitted).

In the instant case, I find the transferor court did not clearly err in finding TCH's alleged negligent intubation of Charles Everhart in New Mexico insufficient to establish minimum contacts with that state. The transferor court found TCH's provision of medical services to Charles Everhart in the air ambulance "merely incidental" to its primary services to him in Denver, and characterized such former services as an "isolated event." (3/21/08 Order at 25–26.) Moreover, the court found Plaintiff failed to show how "[TCH] purposefully directed its activities toward residents of the State of New Mexico" apart from this one event. (*Id.* at 27.) While I might rule differently were I faced with this jurisdictional question *de novo*, I find the transferor court's determination is at least plausible on the grounds that TCH's commission of a single tortious act in New Mexico, in the absence of evidence it directed other activities toward

-15-

residents of that state, arguably demonstrates a mere "attenuated' affiliation with [New Mexico]" rather than a "substantial connection" with that state. *Burger King*, 471 U.S. at 475 n.18 (citations omitted); *see also Christianson*, 486 U.S. at 819 (noting that if transferee court "can find the transfer decision plausible, its jurisdictional inquiry is at an end"). Similarly, I find it at least plausible TCH might not have reasonably anticipated being haled into court in New Mexico on the basis of providing medical services to Charles Everhart in the air ambulance prior to departure for Denver. *Burger King*, 471 U.S. at 474. Finally, despite Plaintiffs' suggestion that the commission of a tort in a forum state always *ipso facto* establishes minimum contacts with that state, they have cited no law so demonstrating, and I am aware of none. Plaintiffs' thought-experiment pertaining to tortfeasor motorists is arguably distinguishable on the grounds that air ambulance passengers do not "invok[e] the benefits and protections of" forum state laws to the same extent that nonresident motorists do simply by flying into and out of forum state airports to help pick up patients. *Burger King*, 471 U.S. at 474–75 (citation omitted). In short, I find it at least plausible that New Mexico lacked personal jurisdiction over TCH, and accordingly decline to hold the transferor court clearly erred in its order. *See Christianson*, 486 U.S. at 819; *Chrysler Credit Corp.*, 928 F.2d at 1518. I also find no evidence that the exercise of jurisdiction over Defendants in this court would work "a manifest injustice" because: (1) there is no question this court enjoys personal jurisdiction over Defendants; (2) Plaintiffs, as current Ohio residents, "will be forced to travel west no matter where (as between New Mexico or Colorado) the action is litigated;" and (3) Plaintiffs have shown no prejudice to themselves arising from the substantive law that might control their claims pursuant to Colorado's choice-of-law rules as opposed to that

which might control their claims pursuant to New Mexico's choice-of-law rules.  (3/21/08 Order at 23; *see also* Pls.' Br.; Pls.' Reply.)

Alternatively, even were I to assume the transferor court clearly erred in holding TCH lacked minimum contacts with New Mexico, I could still not conclude its jurisdictional determination with respect to that defendant was clearly erroreous.  Because the transferor court found TCH lacked minimum contacts with New Mexico, it "[did] not address the reasonableness of asserting personal jurisdiction over" TCH.  (3/21/08 Order at 28.)  Nonetheless, in addressing the reasonableness of asserting jurisdiction over FFL, the court found FFL would not be substantially burdened by litigation in New Mexico, in part because it could have foreseen the possibility of having to defend a New Mexico lawsuit by virtue of its business, and because "the essence of [its] business is mobility."  (*Id.* at 20.)  By contrast, TCH's business is the treatment of children in Denver, and "the essence" of this business is clearly not "mobility."  Accordingly, I find it at least plausible the transferor court would have reached the same jurisdictional determination with respect to TCH even had it found TCH enjoyed minimum contacts with New Mexico, and I decline to initiate a round of "jurisdictional ping-pong" to test this theory, particularly in light of the "squander[ing] of private and public resources" such a decision could entail.  *Christianson*, 486 U.S. at 818–19.

Based on the foregoing, I reject Plaintiffs' second argument for re-transfer.

### c.      *Certification of the Jurisdictional Question to the New Mexico Supreme Court*

Lastly, Plaintiffs request that I certify the question of whether the federal district court in New Mexico had personal jurisdiction over Defendants to the New Mexico Supreme Court.

(Pls.' Br. at 11–12; Pls.' Reply at 10–11.)  FFL and TCH contend that certification is

inappropriate.  (FFL's Resp. at 11; TCH's Resp. at 14–15.)  For the following reasons, I agree

with FFL and TCH.

> Section 39–7–4 of the New Mexico Statutes provides in relevant part:
>
> The supreme court of this state may answer a question of law certified to it by a
> court of the United States . . . if the answer may be determinative of an issue in
> pending litigation in the certifying court and there is no controlling appellate
> decision, constitutional provision, or statute of this state.

N.M. Stat. § 39–7–4 (2008).  Pursuant to this statute, "the New Mexico Supreme Court may

answer questions that the federal district court certifies to it if they involve propositions of New

Mexico law that may be determinative of the matter before the certifying court and there are no

controlling precedents from New Mexico appellate courts."  *Farm Bureau Mut. Ins. Co. v.*

*Jameson*, 472 F. Supp. 2d 1272, 1280 (D.N.M. 2006) (citations omitted).  "The decision to

certify rests in the sound discretion of the federal district court."  *Allstate Ins. Co. v. Brown*, 920

F.2d 664, 667 (10th Cir. 1990) (citation omitted).  "Certification is particularly appropriate

where the legal question is novel and the applicable state law unsettled."  *Id.* (citation omitted).

In the instant case, I find the question of whether New Mexico enjoyed personal

jurisdiction over Defendant involves no "proposition of New Mexico law" because: (1)

Defendants conceded before the transferor court that the dictates of New Mexico's long-arm

statute were met; and (2) the transferor court found jurisdiction wanting on constitutional due

process grounds.  (*See* 3/21/08 Order at 6); *Jameson*, 472 F. Supp. 2d at 1280.  Accordingly, I

find certification of the jurisdictional question to the New Mexico Supreme Court inappropriate and deny Plaintiffs' request.

**3.** ***Conclusion***

Based on the foregoing it is therefore ORDERED that:

1.  PLAINTIFFS' motion for re-transfer (#49) is DENIED.

Dated this 25th day of July, 2008.

BY THE COURT:


s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge