**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Christine M. Arguello**

Civil Action No. 08-cv-00605-CMA-MJW

MICHAEL R. EVERHART, and
KARMELLA FRANIC EVERHART,
Individually and as Next Friend and Natural Parents of
CHARLES MICHAEL EVERHART, a Minor,

Plaintiffs,

v.

THE CHILDREN'S HOSPITAL, and
CATHOLIC HEALTH INITIATIVES COLORADO, d/b/a Flight for Life,

Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS FOR DETERMINATION OF LAW**

---

This matter is before the Court on motions for determination of law filed by both Defendant The Children's Hospital (Doc. # 108) and Defendant Catholic Health Initiatives Colorado d/b/a Flight for Life (Doc. # 111). For the following reasons, the motions are GRANTED.

**INTRODUCTION**

This case arises out of the alleged medical negligence of employees of Defendants The Children's Hospital ("Children's Hospital") and Catholic Health Initiatives Colorado, d/b/a Flight for Life ("Flight for Life") while performing an emergency transport of Plaintiffs' premature infant son from New Mexico to Colorado. The case was initially filed in New Mexico but, after various removals and transfers, ended up

before this Court. Given that both the substantive facts and the case's procedural history span two states, the parties understandably disagree about which state's laws govern. Defendants filed motions arguing that Colorado's substantive law, including specifically Colorado's medical malpractice damages caps, apply to this action. Plaintiffs disagree and urge the Court to find that New Mexico law applies, a finding that would have the effect of leaving any damage award uncapped. The motions are fully briefed and ripe for decision.

**BACKGROUND**

The background facts of this case are largely uncontested. At all relevant times, Plaintiffs were residents of New Mexico. *See* Doc. # 109, ¶ 3. Defendants, on the other hand, were and are based in Colorado. *See id.,* ¶¶ 4-13. On August 20, 2004, Plaintiffs' son, Charles Michael Everhart, was born prematurely at the University of New Mexico Health Sciences Center. *See* Doc. # 93, ¶¶ 2-3. Charles required hospitalization, but at the time there were no available beds in the hospital's Neonatal Intensive Care Unit. *See id.,* ¶ 3. Following a search for space in hospitals in nearby states, arrangements were made to transport Charles to Children's Hospital in Denver. *See id.* An aircraft operated by Flight for Life was sent to New Mexico to pick Charles up. *See id.,* ¶ 5. On the flight was a transport team consisting of a flight nurse and EMT employed by Flight for Life and a respiratory therapist employed by Children's Hospital. *See* Doc. # 109, ¶ 21. Once on the ground in New Mexico, the team placed a breathing tube in Charles' airway to prepare him for transport back to Colorado. *See* Doc. # 93, ¶¶ 6-7. Plaintiffs claim that the tube was too large and, as a result, Charles

developed a condition known as subglottic stenosis. *See id.,* ¶ 8. This condition has allegedly required multiple surgeries and hospitalizations. *See id.* The fundamental dispute in this case centers on whether this intubation was negligently performed.

Plaintiffs initially filed this suit in state court in New Mexico. *See* Doc. # 1 at 4. Defendants removed the case to federal court in New Mexico and, once there, successfully argued that the case should be transferred to this Court because New Mexico lacked personal jurisdiction over them. *See id.* at 30-31. Defendants then filed the instant motions contending that Colorado law, rather than New Mexico's, governs the "rules of recovery," *i.e.*, what damages are recoverable if Plaintiffs succeed on the merits.

Both Colorado and New Mexico provide for limits on the amount of damages recoverable in medical malpractice actions. Colorado's Health Care Availability Act ("HCAA") sets a presumptive total cap of $1,000,000, and within that limit a smaller cap on noneconomic damages. *See* C.R.S. § 13-64-302(1)(b). A court can waive the $1,000,000 limit for good cause shown if it determines that economic damages would exceed the cap and that application of the cap would be unfair. *See id.* The statute applies to any tort action brought against a health care professional or institution. *See id.*

Similarly, New Mexico's Medical Malpractice Act ("MMA") provides that total recovery in a medical malpractice suit cannot exceed $600,000, exclusive of punitive damages and medical care, and that a health care provider's individual liability is capped at $200,000. *See* N.M. Stat. § 41-5-6. Amounts in excess of the $200,000 limit

are paid out of the state's patient compensation fund. *See id.* However, not all health care providers receive the benefit of the caps. The statute only applies to health care providers who maintain a certain minimum amount of malpractice insurance and pay an assessed surcharge. *See id.* § 41-5-5(A). Of particular importance in this case, the New Mexico MMA caps apply only to those "health care providers" that are licensed by New Mexico. *See id.* § 41-5-3(A). Yet, New Mexico specifically exempts, from its licensure requirements, out-of-state health care professionals such as the members of the Flight for Life team, who come into the state on an emergency basis. *See id.* §§ 61-3-29(D) (exempting nurses licensed in another state who enter New Mexico to transport a patient); 61-12B-4(C)(4) (exempting respiratory care services rendered in an emergency).

Under the facts of the instant case, then, what state's substantive rules of recovery apply may have serious implications. If Colorado law controls, the HCAA's damage caps may limit Plaintiffs' recovery. If, however, New Mexico law governs, the MMA's damage caps will not apply because the members of the Flight for Life team were not licensed in New Mexico when they traveled there to transport Charles to Colorado.

## **ANALYSIS**

### I. LEGAL STANDARDS

A federal court sitting in diversity usually applies the forum state's choice of law principles to determine what state's substantive laws apply to a given issue in the case. *See, e.g.*, *Viernow v. Euripides Dev. Corp.*, 157 F.3d 789, 793 (10th Cir. 1998).

However, when the matter is transferred from one jurisdiction to another, more nuanced rules apply. If the case is transferred under 28 U.S.C. § 1404(a), which permits a transfer "[f]or the convenience of parties and witnesses," the choice of law rules of the jurisdiction in which the transferor court sits apply. *See Viernow*, 157 F.3d at 793. On the other hand, if the case is transferred under 28 U.S.C. § 1631, which allows a court to transfer, rather than dismiss, a case when the original court lacks jurisdiction, the relevant choice of law principles are determined according to the transferee court's law. *See Viernow*, 157 F.3d at 793.

New Mexico – the transferor court's forum – provides very simply that, in a tort action, the substantive laws of the state where the injury occurred govern the action. *See, e.g.*, *Terrazas v. Garland & Loman, Inc.*, 142 P.3d 374, 377 (N.M. App. 2006) ("In determining which jurisdiction's law should apply to a tort action, New Mexico courts follow the doctrine of *lex loci delicti commissi* – that is, the substantive rights of the parties are governed by the law of the place where the wrong occurred.").

By contrast, Colorado – the transferee court's forum – has adopted the "most significant relationship" test expressed in the Restatement (Second) of Conflict of Laws ("Restatement") § 145. *See, e.g.*, *In re AE, Inc. v. Goodyear Tire & Rubber Co.*, 168 P.3d 507, 509 (Colo. 2007). Under this test, the state with the most significant relationship to the occurrence and the parties for any particular issue supplies the relevant substantive law. The analysis of which state has that relationship is guided by § 6 and § 145 of the Restatement. Section 6 enumerates seven factors relevant to the choice of the applicable rule of law, including:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Restatement § 6. Section 145 then provides specific contacts that may be taken into account in connection with the principles of § 6. These contacts include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

Restatement § 145. The contacts do not weigh equally; rather, they are to be "evaluated according to their relative importance with respect to the particular issue." *Id.*

Colorado has further refined this choice of law analysis in multi-state tort cases such as the present case. As for policy considerations, "[t]he 'relative interests of the

states in the determination of the outcome' and the 'purpose sought to be achieved by the relevant tort rules of the interested states' are the factors of greatest importance." *Scheer v. Scheer*, 881 P.2d 479, 480 (Colo. App. 1994) (quoting *Abdelsamed v. New York Life Ins. Co.*, 857 P.2d 421, 429, *rev'd on other grounds*, *Hock v. New York Life Ins. Co.*, 876 P.2d 1242 (Colo. 1994)). As for which contacts are most relevant in determining the recovery a party may seek – as opposed to the standards of conduct a party must follow – "the domicile, residence, and the place where the relationship between the parties is centered, are to be weighed more heavily." *Scheer*, 881 P.2d at 481 (citing *Sabell v. Pacific Intermountain Express Co.*, 536 P.2d 1160, 1165 (Colo. App. 1975)); *see also Sabell*, 536 P.2d at 1165 ("The relationship the parties have with a particular state has the greatest effect upon which of such rules of recovery should apply.").

The parties disagree both about the threshold question of which state's choice of law rules control and about the outcome of that particular choice of law analysis on the question of what substantive rules of recovery apply.

## II. WHICH STATE'S CHOICE OF LAW ANALYSIS APPLIES?

Defendants urge that Colorado choice of law rules apply to both Children's Hospital and Flight for Life. *See* Doc. # 109 at 1; Doc. # 111 at 7. Plaintiffs agree that Colorado's choice of law rules apply to Children's Hospital but contend that New Mexico's rules apply to Flight for Life because Flight for Life was transferred to this Court pursuant to 28 U.S.C. § 1404(a) and not 28 U.S.C. § 1631. *See* Doc. # 114 at 10; *see also Viernow*, 157 F.3d at 793 (noting that the transferor court's choice of law rules

apply in a § 1404(a) transfer, but that the transferee court's rules apply in a § 1631 transfer). More specifically, Plaintiffs argue that the New Mexico court had jurisdiction over Flight for Life but transferred the entire case to avoid splitting the litigation once it determined that it lacked jurisdiction over co-defendant Children's Hospital. *See* Doc. # 114 at 10. Plaintiffs argue that the New Mexico court's transfer of Flight for Life to Colorado was essentially a § 1404(a) "convenience" transfer rather than a lack of jurisdiction transfer. *See id.* at 10-11. As such, Plaintiffs assert that the choice of law rules of the transferor forum – New Mexico – apply to Flight for Life. *See id.*

Plaintiffs' argument that Flight for Life's transfer was not jurisdictional focuses on various statements in the New Mexico court's transfer order noting that Flight for Life had sufficient contacts with New Mexico, but that the case would be more efficiently litigated in Colorado. *See id.* at 11-12. Plaintiffs acknowledge that this Court has already considered and rejected their interpretation of the New Mexico court's transfer order, but urge reconsideration of that ruling. *See id.* at 11. Flight for Life argues that the prior decision is the "law of the case." Doc. # 117 at 9. However, while "[g]enerally, the 'law of the case' doctrine dictates that prior judicial decisions on rules of law govern the same issues in subsequent phases of the same case," the rule "is a flexible one that allows courts to depart from erroneous prior rulings, as the underlying policy of the rule is one of efficiency, not restraint of judicial power." *Been v. O.K. Industries, Inc.*, 495 F.3d 1217, 1224 (10th Cir. 2007) (citations and internal quotations omitted). Indeed, "district courts generally remain free to reconsider their earlier interlocutory orders." *Id.* at 1225.

Because this is an important issue to both parties, the Court reconsiders this issue and finds that the New Mexico court did, in fact, rule that it lacked jurisdiction over Flight for Life. Personal jurisdiction is a two-part inquiry. *See, e.g.*, *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060, 1065 (10th Cir. 2007). First, the defendant must have sufficient "minimum contacts" with the forum state. *See id.* *S*econd, even if the contacts are sufficient, the exercise of jurisdiction must be "reasonable" under the circumstances such that haling the defendant into court in the forum would not "offend traditional notions of fair play and substantial justice." *See id.* at 1066 (citations and internal quotations omitted). Admittedly, the second prong of the jurisdictional analysis and the § 1404(a) venue analysis can quite similarly focus on convenience and efficiency. *Compare* 28 U.S.C. § 1404(a) (permitting transfer "[f]or the convenience of parties and witnesses, in the interest of justice") *with Trujillo v. Williams*, 465 F.3d 1210, 1221 (10th Cir. 2006) (noting that one factor in the jurisdictional reasonableness inquiry is "the interstate judicial system's interest in obtaining the most efficient resolution of controversies"). However, it is clear from the context of the New Mexico court's order that the court is referring to the second prong of the jurisdictional analysis, and not to a § 1404(a) determination that venue would be more convenient elsewhere, when discussing transfer with respect to Flight for Life. *See* Doc. # 1 at 23-24 ("It is the fourth factor in the [jurisdictional reasonableness] analysis – the interstate judicial system's interest in obtaining the most efficient resolution of controversies – that persuades the Court that this matter should be litigated in Colorado."); *see also id.* at 30 (noting that "the same concern for efficiency that ultimately tipped the balance against asserting

personal jurisdiction over Flight for Life" supported transferring the case instead of dismissing it). In other words, while the New Mexico court found that Flight for Life had contacts sufficient to satisfy step one of the inquiry, it further found that exercising jurisdiction would be unreasonable under step two of the inquiry. *See id.* at 19-24.

Given that the transfer of this case from New Mexico to Colorado was based on lack of jurisdiction as to both Defendants, the same choice of law rules – Colorado's – apply to both Children's Hospital and Flight for Life. The question, then, is whether Colorado or New Mexico has the "most significant relationship" to the parties with respect to the issue of Plaintiffs' potential recovery.

## III. WHICH STATE'S SUBSTANTIVE LAW APPLIES?

As noted above, Colorado's choice of law analysis focuses on particular contacts, in light of particular factors, to determine the state with the most significant relationship to the particular issue in question. In this case, to determine the rules of recovery, the key contacts to be evaluated are the domicile or residence of the parties and the state where their relationship is "centered." *See Scheer*, 881 P.2d at 481. The key policy considerations that further inform the analysis are the interest of the relevant states and the purposes sought to be achieved by those states' relevant rules. *See id.* at 480.

The contacts analysis is a close call and does not clearly point to either Colorado or New Mexico. Considering domicile, Plaintiffs were, at the time of the alleged injury and at the time of filing suit, domiciled in and residents of New Mexico. *See* Doc. # 109, ¶ 3. Defendants, on the other hand, were and are located in Colorado. *See id.,*

¶¶ 4-13. Given this split, domicile is not particularly useful in determining the state with the most significant relationship. The same problem exists in analyzing where the parties have "centered" their relationship. Both parties are connected to the other's state only through exigent circumstances. Plaintiffs came to Colorado only when there was no space available in New Mexico for their infant son's urgent medical care, while Defendants' entered New Mexico only to respond to a medical emergency. *See id.,* ¶¶ 18, 20. Neither side can be said to have deliberately chosen to center the relationship in the other's territory.[1] Moreover, the parties fundamentally disagree about which state they, collectively, are most connected to. From Plaintiffs' perspective, the relationship is centered in New Mexico – the state where the parties were located when the allegedly tortious acts were committed. *See* Doc. # 114 at 6-7, 8-9. From Defendants' perspective, the relationship is centered in Colorado – the state where Charles was admitted for emergency care and where he remained for ten days. *See* Doc. # 109 at 12; Doc. # 111 at 3. Each position has merit, and neither obviously compels a conclusion that one state or the other has the most significant relationship to the parties and the occurrence.[2]

---

[1] Defendants argue that Plaintiffs chose to come to Colorado, as they opted for Children's Hospital from the available area hospitals. *See* Doc. # 109 ¶ 19; Doc. # 111 at 2. However, the need to look to out-of-state hospitals arose only because no New Mexico hospital could accept Charles for critical, life-saving treatment. Time was of the essence. Under these circumstances, it is unfair to characterize Plaintiffs' choice of Children's Hospital as intentionally centering the relationship in Colorado.

[2] The parties also dispute when and where Charles' injury occurred. Plaintiffs contend that the injury happened at the time Charles was intubated in New Mexico. *See* Doc. # 114 at 8-9. Defendants respond that any injury caused by the tube got worse over time and therefore necessarily occurred in Colorado, given that Charles was in New Mexico only briefly but stayed intubated in Children's Hospital for nearly two-and-a-half days. *See* Doc. # 109 at 13-14; Doc. # 111 at 17. Given this factual dispute, the "place of injury" analysis is also not helpful in the choice of law determination. More importantly, under Colorado law the place of injury is not a

However, in light of the relevant policies enumerated in the Restatement, the Court is convinced that application of Colorado's rules of recovery is proper. Both Colorado and New Mexico have enacted damages caps on medical malpractice claims. *See* C.R.S. § 13-64-302; N.M. Stat. § 41-5-6. They have both done so as part of a plan to encourage the availability of health care for their citizens. *See* C.R.S. § 13-64-102(1) ("[I]t is in the best interests of the citizens of this state to assure the continued availability of adequate health care services to the people of this state by containing the significantly increasing costs of malpractice insurance for medical care institutions and licensed medical care professionals . . . ."); N.M. Stat. § 41-5-2 ("The purpose of the Medical Malpractice Act is to promote the health and welfare of the people of New Mexico by making available professional liability insurance for health care providers in New Mexico."). Thus, the relative interests of both states favor protecting medical professionals by limiting their liability for negligence.

Therefore, this is not a case where the interested states have announced competing policies on limitation of damages. Rather, Defendants do not qualify to take advantage of New Mexico's caps because they are not licensed to practice medicine there. But they are unlicensed only because New Mexico has articulated another important policy – that medical professionals need not be licensed when they are in

---

particularly relevant contact for purposes of evaluating which state's rules of recovery control. *See, e.g.*, *Sabell*, 536 P.2d at 1165-66.

New Mexico only on an emergency basis.[3] *See infra* at 3-4. Indeed, applying New Mexico law to the facts and circumstances of this case would undercut the intent of this policy choice. If out-of-state medical professionals find that they will be subject to unlimited damages while in New Mexico to provide emergency care, those professionals will be discouraged, rather than encouraged, from continuing to provide such emergency treatment, which could hamper the interstate medical cooperation that New Mexico seeks to promote. In short, applying New Mexico law under these circumstances, and removing any caps on Plaintiffs' potential recovery, cannot fairly be said to further New Mexico's interests. Instead, applying New Mexico law would simply exploit a loophole established by the interaction between two statutes that were designed, not to provide for a plaintiff's unlimited recovery, but rather to facilitate the provision of medical care to New Mexico's citizens. Such a result would be inappropriate.

Finally, it is important to note that Plaintiffs' ability to seek just compensation is not frustrated by the application of Colorado law. The Colorado caps are not insubstantial. Moreover, if economic damages in fact exceed the limits, the Court may permit an award in excess of the limits for good cause shown. *See* C.R.S. § 13-64-302(1)(b). This provision protects Plaintiffs if, in fact, the effect of the cap is unfair, and reduces the concern that Plaintiffs' recovery will be artificially restricted.

---

[3] Plaintiffs argue that New Mexico's caps should not be given much weight, because only a limited number of the state's health care professionals – less than 50%, and none of the major hospitals – qualify for the caps. *See* Doc. # 114 at 7-8. But regardless of how many people take advantage of the caps, the fact remains that New Mexico's enactment of the caps indicates a policy, shared by Colorado, in favor of providing a means for medical professionals to limit their liability for medical negligence.

**CONCLUSION**

The Court finds that the relevant considerations outlined in the Restatement favor application of Colorado's rules of recovery in this case. Recognizing limitations on Plaintiffs' potential recovery would respect both Colorado's and New Mexico's interest in limiting medical professionals' exposure to excessive judgments, while also furthering New Mexico's interest in continuing to receive out-of-state emergency medical assistance. Applying New Mexico law, on the other hand, could significantly undermine those policies. Thus, both the relative interests of the states and the purposes behind their rules favor application of Colorado law.

Accordingly, it is

ORDERED that the Motion of Defendant The Children's Hospital for Summary Adjudication of Question of Law (Doc. # 108) and the CHIC Amended Motion for Determination of Law (Doc. # 111) are GRANTED. The limitations set forth in the Colorado HCAA shall apply to this action.

DATED: May 27, 2009

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge